UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

v.

DEYANNA DAVIS, et al.

                Defendants

_____

**DECISION AND ORDER**

20-CR-00079-LJV-JJM

        Defendant Deyanna Davis, along with codefendants Semaj Pigram and Walter Stewart, is named in a June 4, 2020 Indictment [1] charging her with being a felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1), 924(a)(2), and 2. On June 18, 2020 the government moved for pretrial detention pursuant to 18 U.S.C. §3142(f), arguing that defendant's release would pose a danger to the community.[1] A detention hearing was held remotely via Zoom videoconference on June 23 and 26, 2020 at which the parties proceeded by proffer, accompanied by videos and photographs.

        In determining whether there are conditions of release that will reasonably assure the safety of the community, I have considered the factors enumerated in 18 U.S.C. §3142(g), "bear[ing] in mind that it is only a limited group of offenders who should be denied bail pending trial". United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987).

        **1. The nature and circumstances of the offense charged** - The charges arise from an incident occurring on the evening of June 1, 2020 during a protest in the vicinity of Bailey Avenue and Connelly Street in the City of Buffalo. The videos proffered by the government depict a chaotic scene. Several law enforcement officers had formed a barricade line

---

[1]     The government did *not* argue that defendant poses a risk of flight.

across Bailey Avenue to control an ongoing protest, and tear gas was dispersed toward the crowd of protesters (the government does not contend that these defendants were involved in the protest). An SUV operated by Davis (with Stewart in the front passenger seat and Pigram in the rear driver-side seat), was stopped on Bailey Avenue adjacent to an NFTA bus, when suddenly an occupant of the SUV (believed to be Pigram) opened the door and fired several shots into the air.

Shortly thereafter, the SUV accelerated into the police line, striking several officers, one of whom was seriously injured. The SUV then turned onto Connelly Street, where it came to a stop approximately halfway down the block. At that point Pigram ran from the SUV, crossing the Kensington Expressway, until he was finally apprehended by law enforcement. A Smith and Wesson semi-automatic 9 millimeter handgun was retrieved from the rear floor area of the SUV, behind the driver's seat. Testing confirmed that the shots fired on Bailey Avenue came from that handgun.

**2.   The weight of evidence against the defendant** - "[S]ome courts have described the weight of the evidence factor as the least important of the §3142(g) factors because it is inherently difficult to assess the Government's case before trial and a defendant must be presumed innocent." United States v. Parker, 65 F. Supp. 3d 358, 365 (W.D.N.Y. 2014).

While DNA testing has confirmed that neither Davis nor Stewart had contacted the handgun, the government argues that as the driver of the SUV, Davis constructively possessed the gun. The government relies upon United States v. Speer, 30 F.3d 605, 612 (5th Cir. 1994): "Knowing possession of the firearm is an essential element for conviction under §922(g)(1). Possession may be actual or constructive. Constructive possession is the exercise of,

-2-

or the power or right to exercise dominion and control over the item at issue and may be shown by dominion over the vehicle in which the item is located."

While that may suffice for probable cause, I question whether the government will be able to establish that Davis exercised sufficient "dominion and control" over the handgun to sustain a conviction. Much will depend on the relationship among the occupants of the vehicle, which has not been spelled out in any detail at this time. For example, the government suggests that Davis's dominion and control over the handgun is demonstrated by her actions in operating the vehicle before, during and after the gunshots were fired. However, it is possible that once the shots were fired, Davis panicked or was in fear of Pigram (who was likely the shooter), and for that reason accelerated into the police line rather than turning around. However, at this point Davis bears no burden of proof in that regard, and the government has failed to satisfy me that she necessarily acted intentionally with respect to her operation of the vehicle, constructive possession of the handgun, or both.

**3. Defendant's history and characteristics** - I admit that I am troubled by some the facts discussed in the June 22, 2020 Pretrial Services Report. For example, in 2009 Davis pleaded guilty to attempted robbery, and in 2013 she was convicted of attempted witness tampering and intimidation of a witness. Moreover, during her bail interview she stated that she has been unemployed since age 17 and denied any history of illicit substance use. However, her attorney and family members state that she is self-employed as beautician working out of her home, and the government proffered that her blood test after the accident revealed evidence of illicit substances.

While these factors do give me pause, I know that Davis is married and has four young children. Moreover, she appears to have strong family support and her mother, father and great grandmother are each willing to execute $25,000 signature bonds on her behalf. In addition, the family is raising collateral to secure her release from custody on pending state charges arising from the June 1 incident.

Notwithstanding the concerns which I have discussed, I am guided by the fact that "[t]he Bail Reform Act, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." United States v. Barner, 743 F. Supp. 2d 225, 228 (W.D.N.Y. 2010); United States v. Madoff, 586 F. Supp. 2d 240, 250 (S.D.N.Y. 2009).

**4. The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release** - The government admits that there is no statutory presumption favoring detention in this case. Therefore, it must demonstrate, by "clear and convincing evidence", that no condition or combination of conditions will reasonably assure the safety of any other person and the community". United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). "'[C]lear and convincing evidence'. . . means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt' . . . . To find danger to the community under this standard of proof requires that the evidence support such a conclusion *with a high degree of certainty*." Id. (emphasis added).

Much of the government's proffer related to matters other than possession of the handgun, such as the operation of the SUV. While I recognize that "the danger that the defendant poses to the community need not arise from or have a nexus with the offenses charged in the indictment", United States v. Boorman, 130 F. Supp. 2d 394, 399 (W.D.N.Y. 2001), for the reasons already discussed, I conclude that the government has failed to offer "clear and convincing evidence" that no conditions of release can ameliorate that danger.

## CONCLUSION

"[T]he Bail Reform Act requires only reasonable assurance, *not* a guarantee, that the conditions will prevent danger." Barner, 743 F. Supp. 2d at 233 (emphasis in original). I am reasonably assured that the conditions which I have imposed today[2] will prevent any danger which Davis might pose to the community if released. However, in order to give the government an opportunity to seek review by District Judge Lawrence J. Vilardo, I will stay the effect of this Order until June 30, 2020 at 5:00 pm. If Judge Vilardo does not issue a further stay by that time, Davis shall be released once the various conditions to her release have been satisfied.

SO ORDERED.

DATED: June 26, 2020

                                                  /s/ Jeremiah J. McCarthy
                                                  JEREMIAH J. MCCARTHY
                                                  United States Magistrate Judge

---

[2] They are detailed on the record, and include electronic monitoring, home incarceration, mental health counseling, no contact with codefendants, compliance with all conditions of release imposed in state court, and security to be furnished by family members.

-5-